Matter of Marano (Steven S.) (2025 NY Slip Op 50232(U))

[*1]

Matter of Marano (Steven S.)

2025 NY Slip Op 50232(U)

Decided on February 24, 2025

Supreme Court, Nassau County

Knobel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 24, 2025
Supreme Court, Nassau County

In the Matter of the Final Account of Anthony F. Marano, as Temporary Receiver, of the properties of Steven S., An Incapacitated Person.

Index No. 850081/2022

Carol Sigmond — Counsel to Corrine S. (Petitioner)
Greenspoon Marder LLP
1345 Avenue of the Americas Suite 2200
New York, NY 10105
(212) 524-5000
Carol.sigmond@gmlaw.com
Robert M. Harper — Counsel to Shelly S.F. (cross petitioner) 
Farrell Fritz, P.C.
400 RXR Plaza 4th Floor West Tower
Uniondale, NY 11554
(516) 227-0625
rharper@farrellfritz.com
Sarah A. Chussler — Counsel to Steven S. (Alleged Incapacitated Person)
Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
(516) 592-5857
schussler@abramslaw.com
Ariella T. Gasner — Court Evaluator
Salem, Shor & Saperstein
3000 Marcus Avenue, Suite 1W6
Lake Success, NY 11042 (516) 472-7030
Ariella.gasner@gmail.com
John Newman — Temporary Guardian
John Newman, Esq.
6268 Jericho Turnpike, Suite 7
Commack, NY 11725
(631) 486-7802
jnewesq@gmail.com
Seth D. Kaufman -Labor Law appointed Counsel to Steven S. (AIP)
Fisher & Phillips, LLP
7 Times Square Suite 4300
New York, NY 10036
(212) 899-9975
skaufman@fisherphillips.com
Hon. Anthony F. Marano — Temporary Receiver 
Anthony Marano Esq. 
PO Box 423
Malverne, NY 11565
(646) 745-7596
anthonymarano@icloud.com
Thomas McNamara — Counsel to Temporary Receiver
Certilman Balin Adler & Hyman, LLP
90 Merick Avenue, 9th Floor
East Meadow, NY 11554
(516) 296-7057
tmcnamara@certilanbalin.com
Peter Levy, - Court Examiner
366 North Broadway, Suite LW1
Jericho, NY 11753
(516) 822-5800
PeterLevyEsq@Outlook.com

Gary F. Knobel, J.

Papers Considered:
Referee Report (NYSCEF Doc. No. 564-565) 1
Corinne S.'s Objections and Exhibits (NYSCEF Doc. No. 572-575) 2
Temporary Receiver's Reply and Exhibits (NYSCEF Doc. No. 576-588) 3
Upon the forgoing papers, the motion to judicially settle the final account is also deemed a motion to confirm the report of the referee and as such is granted for the reasons explained below and to the extent set forth in the long form order settling the final account signed [*2]simultaneously with this decision and order.
During the initial phase of this guardianship proceeding pursuant to Article 81 of the Mental Hygiene Law, the only certainty presented to this Court by the parties was the uncertainty of the extent of the enormous possible financial losses and theft in the millions of dollars sustained by and perpetrated against the alleged incapacitated person ("AIP"), Steven S. Consequently, in accordance with Article 81's prime directive that the Court make decisions which are in the best interests of the AIP and preserve the AIP's assets, this Court appointed the Hon. Anthony F. Marano (Ret.) as temporary receiver over the AIP's various commercial assets (see order dated December 23, 2022, Knobel, J.). 
After providing extensive professional services over very complicated matters which constantly required urgent attention daily, the temporary receiver submitted his final accounting on September 30, 2024. This Court then appointed the court examiner, Peter H. Levy, Esq., as a referee to review and report on the temporary receiver's final accounting (see order dated September 30, 2024, Knobel, J.). Referee Levy's report was submitted to the Court and all parties on December 12, 2024. 
Corinne S., one of the daughters of Steven S. and the only family member who is critical of the receiver's actions, filed opposition to the referee report on December 20, 2024. The Court notes that Corinne was not appointed by this Court as a guardian for Steven (see decision and order dated December 31, 2023, Knobel, J., Matter of Corinne S. (Steven S.), 82 Misc 3d 679), nor has she appealed any adverse decision in this proceeding. Moreover, Steven S. never conveyed to Corinne or gifted to her any ownership interest in any of his personal, business and real estate holdings. Neither of the parties who also filed petitions - Steven S.'s estranged wife, nor his daughter from a previous marriage — have ever opposed the previous and current fee request by the temporary receiver. Corinne never filed formal objections or opposition to the temporary receiver's final account. 
Corinne now argues (1) that the funds collected, marshalled and obtained by the receiver by various means should not have been placed by him in an IOLA account; (2) that the receiver has caused the guardianship estate to sustain a dramatic loss in value; (3) that the temporary receiver should not receive an award of five percent (5%) of the monies he collected; and (4) that the temporary receiver be surcharged for the loss of income.
As stated previously, Corinne's objections are not timely since she did not object after the temporary receiver's final accounting was filed. Filing an objection to a referee report does not create a timely challenge to the receiver's final account, nor does it create another chance to timely appeal or reargue any previous court order or motion. 
Nevertheless, even if her objections are considered timely, the Court finds, for the reasons stated below, that Corinne's objections are baseless, lack merit, and do not warrant a hearing since inter alia Corinne failed to establish (a) that the amounts set forth in the final account are inaccurate, and (b) that her objections raise genuine material issues of fact rather than feigned disputed issues regarding the reasonableness of fees or the management of assets (see Matter of Shauntray T. [Margaret T.], 176 AD3d 719, 719 [2d Dept.2019]). The Court further notes that the substantive issues at the core of Corinne's objections were the subject of prior hearings and conferences; thus, to conduct a hearing would be duplicative of previously litigated and judicially settled matters.
The temporary receiver's final account, the referee's report on the final account, and Corinne's objections, must be viewed within the context of the procedural history of this [*3]proceeding, which was made even more complicated by the bankruptcy filing pertaining to one of Steven S's assets.
When this Court was first presented with the petition and order to show cause, the Court was immediately confronted with allegations of classic elder financial abuse, financial exploitation and undue influence allegedly perpetrated by a close business associate of Steven S., Mark Wysocki. This Court subsequently suspended the power of attorney and health care proxy allegedly executed by Steven S., and appointed a temporary guardian, a court evaluator, and an attorney to represent Steven S, because of the averred allegations of the financial improprieties, self-dealing and poor business judgment implemented by Wysocki. Shortly thereafter, this Court appointed labor counsel to represent the temporary guardian in federal court in New Jersey to protect Steven S's ownership interest in Arbah Corp., which owned a non-operational and dilapidated hotel; Wysocki had been held in contempt by a United States District Court judge for the non-payment of wages to hotel employees. 
This Court subsequently granted the application by the temporary guardian for the appointment of a temporary receiver to manage and preserve Steven S's businesses based upon, inter alia, Wysocki's failure (1) to turn over the proceeds and the documentation pertaining to the sale of one of the properties owned by Steven S., 52 West Associates LLC , for $33,000,000.00 million dollars; and (2) to sell that property in accordance with Internal Revenue Code §1031 and consequently save millions of dollars in taxes. Two years prior to the sale of this valuable property, on May 20, 2022, Steven S. allegedly transferred or gifted to Mark Wysocki fifteen percent (15%) of his one hundred percent (100%) interest in Arbah Corp. and 52 West Associates LLC. However, both the court evaluator and the temporary guardian, based upon evidence reviewed in camera by the Court, contended that Steven S. may not have had capacity when he executed the documents transferring his interests in those corporations.
Mark Wysocki, prior to the second and third phases of the trial, filed in the United States Bankruptcy Court ("Bankruptcy Court") in Newark, New Jersey, a bankruptcy petition on behalf of Arbah Corp as a purported fifteen percent owner of Arbah Corp. The proceeding at bar was not stayed since Arbah Corp. was not a party in this case. The second and third phases of the trial concerned whether cross-petitioner Wysocki breached his fiduciary duty on behalf of Steven S., and whether Steven S. had capacity (1) when he allegedly conferred upon Wysocki a power of attorney in May 2020; (2) when he allegedly transferred to Wysocki fifteen percent (15%) of his businesses; (3) when he sold the Florida property in 2021; and (4) when 52 West Associates LLC sold that the New York County property. However, before Wysocki was scheduled to cross the proverbial Rubicon and answer questions under oath on those issues, a comprehensive settlement agreement between Wysocki and the parties was reached, which this Court approved (see order dated July 20, 2023, Knobel, J.). As a part of the settlement agreement, cross-petitioner Wysocki withdrew his petition seeking to be the guardian, and the power of attorney and health care proxy were revoked.
Steven S.'s hotel asset was shuttered since the COVID-19 pandemic and needed substantial repairs and renovation. An expert estimated that it would cost $17,500,000.00 to reopen the hotel and incur carrying costs of approximately $870,000.00 during the renovations. There were numerous issues occurring daily, including vandalism, fires, and the validity of the insurance on the property. The temporary receiver effectively and painstakingly dealt with all those emergencies, exercising important and correct business judgment and managerial determinations. For example, the temporary receiver skillfully effectuated and negotiated the [*4]sale of the hotel under the auspices of the Bankruptcy court for $24,000,000.00, almost three times the appraised value of $9,000,000.00 made by an independent appraiser.
Turning to the objections made by Corinne S., the sale of the hotel cannot be legitimately questioned in light of the appraisal, the selling price, the state of the condition of the hotel and Steven S.'s functional limitations (see order dated September 8, 2023, Knobel, J., which approved of the sale). In addition, the obstructionist demeanor of Wysocki, combined with the disorganization in which the business had operated, made it impractical and imprudent for the guardian or the receiver to engage in Corinne's proposed business venture to rehabilitate hotels such as the subject hotel, given Steven S.'s age and severe medical conditions. Moreover, this Court, the Bankruptcy Court and the bankruptcy Trustee reviewed the applications made by the temporary receiver and approved of the sale of the hotel. The court appointees ensured that Steven S.'s rights, interests and assets were preserved. Thus, this Court does not find that the arguments made by Corinne regarding the hotel and the bankruptcy proceeding raise a genuine disputed material issue of fact.
Similarly, the temporary receiver appropriately placed the funds in his possession in an IOLA account. This Court, in the order appointing the temporary receiver, directed him to place the funds in an IOLA account. When Corinne voiced objections regarding the lack of interest accruing on the IOLA account, the temporary receiver made an application to IOLA to obtain interest on the account. On December 18, 2024, IOLA issued a unanimous decision denying the request, stating that "the funds at issue were 'qualified funds' under Judiciary Law § 497(2) and NYCCR 700.2(e), requiring applicant to deposit them into an IOLA account" and that "there is no basis for a finding that either the court, in issuing the Order directing applicant to deposit the funds into any IOLA account, or the applicant, in following the court's Order and depositing such funds, was acting in anything but good faith regarding their respective understanding of the nature of the funds" (Exhibit A of the temporary receiver's reply papers). It was clear to the court appointees and this Court that because of prior business dealings and actions which predated the guardianship, there would most likely be financial obligations which would have to be paid for by the guardianship assets. However, there was uncertainty as to the amount of the liabilities and when they would be required to be satisfied. That is why the funds needed to be liquid and not entangled in investments. This concern was substantiated when the multi-million-dollar tax liability and the civil liabilities to certain debtors came to light as this case progressed.
The only conclusion that this Court can reach regarding Corinne S.'s main objections - that the temporary receiver's work was unsatisfactory and was detrimental to Steven S. — is that her all her claims are meritless. On the contrary, the temporary receiver's actions preserved much of the value of the estate, which was at severe risk of being embezzled and or squandered. The temporary receiver was handed a monumental task. He immediately became responsible for a hotel which was in disrepair and not operational in an industrial area near the Meadowlands in northern New Jersey, along with unpaid business obligations, and possible massive tax liability. He had to immediately tangle with a crafty possible business partner of Steven S., who at best could be described as uncooperative, and who may have purloined millions of dollars and an interest in Steven S.'s businesses. Furthermore, the temporary receiver was required to extensively participate and litigate in the Arbah Corp.'s Bankruptcy Court proceeding. Although it is undisputed that Steven S.'s estate has diminished, this appears to be, however, the fault of inter alia possible mismanagement and poor business judgment that predate the temporary receiver and the guardianship. Unfortunately, as in many guardianship cases, the financial [*5]damage occurred before the Court was petitioned to intervene, and its appointees were left to pick up the pieces and do the best they could under the circumstances.
Finally, as to the sum to be awarded to the temporary receiver as his fee, the Court notes that the temporary receiver has not requested a specific amount but has deferred to this Court to determine the amount of the fee. As outlined above, the temporary receiver was faced with a myriad of extraordinarily difficult problems which he resolved to Steven S.'s benefit, using the superb diplomatic skills and excellent legal acumen he acquired as a trial lawyer, Justice of the Supreme Court and as the Administrative Judge of the Nassau County Courts.
Accordingly, for all the reasons stated above and in this Court's previous decision awarding interim fees to the temporary receiver (see order dated November 22, 2023, Knobel, J.),[FN1]
and after considering "the value and size of the assets under administration, the quantity, nature and complexity of the services rendered by the receiver, and the overall reasonableness of the ultimate dollar amount arrived at by applying the formula set out in CPLR 8004" (Laffey v Laffey, 174 AD3d 582, 585 [2nd Dept. 2019]), the Court finds that the temporary receiver deserves and is entitled to the statutory five percent of the $22,627,577.91 collected, and consequently awards the Hon. Anthony F. Marano's (Ret.) the sum of $1,131,378.90, for the professional services he rendered for which he was not previously compensated.
The Court simultaneously approves and confirms the Referee report and shall formally award compensation therein, and the temporary receiver shall not be discharged until an ex parte order is submitted and signed by this Court after the resolution of the bankruptcy proceeding
The foregoing constitutes the decision and order of this Court.
ENTER
DATED: February 24, 2025
HON. GARY F. KNOBEL J.S.C.

Footnotes

Footnote 1: This decision details the reasons why Hon. Anthony F. Marano (Ret.) was appointed, the statutory authority for such award, and the Court's reasoning for awarding the statutory maximum of five percent